UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| In re: ) | | Chapter 7 |
| ) | | Case No. 11-42388 -MSH |
| PATRICK K. SHANAHAN ) | | |
| ) | | |
| Debtor ) | | |
| ) | | |
| LAROC ASSOCIATES, INC. ) | | |
| ) | | |
| Plaintiff ) | | Adversary Proceeding |
| ) | | No. 11-04167 |
| v. ) | | |
| ) | | |
| PATRICK K. SHANAHAN ) | | |
| ) | | |
| Defendant ) | | |
| ) | | |

**MEMORANDUM OF DECISION**

Laroc Associates, Inc., holder of a $444,190.20 state court judgment against Patrick K. Shanahan, the debtor in the main case, seeks judgment denying Mr. Shanahan's discharge under title 11 of the United States Code (the "Bankruptcy Code"), alleging conduct by Mr. Shanahan subject to Bankruptcy Code §727(a)(2)(A) (concealment of property within one year of bankruptcy); § 727(a)(2)(B) (concealment of property after the date of bankruptcy);[1] § 727(a)(3) (failure to keep books and records); § 727(a)(4)(A) (false oath); and § 727(a)(5) (failure to explain deficiency in assets).[2] This is a core matter over which I have jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(J).

---

[1] Laroc's complaint incorrectly references Bankruptcy Code § 727(a)(1) and (2) for these claims.

[2] Laroc's complaint contains a sixth count which cites Bankruptcy Code § 727(a)(6). Laroc

1

After having heard and considered the testimony of the witnesses at trial and having reviewed the exhibits admitted in evidence and the pre and post-trial briefs submitted by the parties,[3] I will enter judgment under Bankruptcy Code § 727(a)(4)(A) denying Mr. Shanahan his discharge. My findings of fact and rulings of law follow.

Mr. Shanahan filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court on June 3, 2011. In support of his petition on June 17, 2011, he filed schedules of assets and liabilities and a statement of financial affairs ("SOFA"), declaring under penalties of perjury that they were true and correct.

On schedule A (real property) Mr. Shanahan listed a single family home in Dunstable, Massachusetts. On schedule B (personal property) in section 2 for bank accounts he listed a checking account at Raytheon Credit Union with a balance of $800 and a checking account at Peoples United with a balance of $300. In each of sections 13 and 14, stock and interests in incorporated and unincorporated businesses and interests in partnerships or joint ventures, Mr. Shanahan stated "none." In section 16, accounts receivable, he stated "none." In section 35, other personal property of any kind not already listed, he stated "none."

In section 7 of his SOFA, seeking disclosure of gifts made within one year of bankruptcy, Mr. Shanahan stated "none." In section 10 of his SOFA, transfers of property within two years of bankruptcy, Mr. Shanahan disclosed a January 1, 2009 transfer by him to his daughters of a

---

acknowledged this was an error and therefore I will dismiss count 6.

[3] The plaintiff moved to strike the defendant's post-trial statement of evidence and claims. In his opposition the defendant states that he could have filed a similar motion with respect to the plaintiff's post-trial statement. I have reviewed the statements in light of the evidence introduced at trial and will ignore any parts of each statement not supported by the evidence.

2

beneficial interest in the Dream Realty Trust. In section 14, property held for another person, Mr. Shanahan stated "none." In section 18, nature location and name of businesses, Mr. Shanahan disclosed interests in 310 LLC[4] d/b/a Jazzwine Grill and Dream Realty LLC.

Many of the statements by Mr. Shanahan in his initial schedules and SOFA were false. While he did have a Raytheon Credit Union checking account, the balance in that account on the date of his bankruptcy petition was approximately $5000 not $800. Mr. Shanahan failed to disclose anywhere on his schedules that as of the date of his bankruptcy petition he together with his non-debtor spouse, Mary Shanahan, was entitled to a 2010 federal income tax refund of $8655. Mr. Shanahan's interest in the tax refund was an asset which should have been listed on schedule B. Mr. Shanahan testified at trial that the tax refund was received by the Shanahans just prior to the commencement of Mr. Shanahan's bankruptcy case and that the money was deposited into Ms. Shanahan's solely-owned bank account and then spent. If Mr. Shanahan had made a gift of his share of the tax refund to Ms. Shanahan pre-petition, he should have but failed to disclose that gift in item 7 or 10 of his SOFA. Contradicting Mr. Shanahan's trial testimony is an amendment to schedule B filed by Mr. Shanahan on December 22, 2011, in which he listed the 2010 tax refund in item 16 as a receivable, meaning it had not been received from the IRS pre-petition. Regardless of which version of the tax refund story is correct, Mr. Shanahan has a problem. If the refund was received prepetition and Mr. Shanahan gave his share to Ms. Shanahan, he should have disclosed the transfer on his SOFA. If he received the refund post-petition and transferred it to Ms. Shanahan, he did so without authority as his share of the refund was an asset of his bankruptcy estate.

---

[4] It appears this refers to an entity known as 310 Realty LLC of which Mr. Shanahan was a member or manager.

3

Mr. Shanahan failed to disclose anywhere in his schedules or SOFA his status as trustee of the Lori Lane Trust which owned residential rental real estate in Pelham, New Hampshire. Mr. Shanahan received income from the operation of the trust which he deposited into his checking account at Peoples United Bank from which checking account he paid expenses of the trust. Mr. Shanahan failed to disclose the income he received from the Lori Lane Trust in item 1 or 2 of his SOFA. To the extent Mr. Shanahan believed that during the two years preceding his bankruptcy the income from the trust was not his but rather that he was collecting rent and paying expenses on behalf of the trust's beneficiaries,[5] he should have disclosed this information in item 14 of the SOFA as property he held for another person.

SOFA item 18 requires disclosure of all businesses in which an individual debtor served as an officer, director, partner, managing executive, or sole proprietor or in which a debtor owned more than 5% of the equity within six years of bankruptcy. In Mr. Shanahan's case this obliged him to disclose all such businesses going back to June, 2005. In their joint federal income tax returns for 2006, 2007 and 2008 Mr. and Ms. Shanahan declared business income and expenses from, among others, Dream Diner, Inc. Mr. Shanahan failed to list this entity in SOFA item 18.

The 2006, 2007 and 2008 tax returns also declared business income and expenses from commercial real estate in Tyngsboro, Massachusetts. On March 17, 1998, Mr. Shanahan was appointed by his wife a co-trustee along with her of the Dream Realty Trust which owned commercial real estate in Tyngsboro. He was also made a beneficiary of the trust at that time. In a certificate of trustee of the Dream Realty Trust dated December 9, 2005, issued for purposes of the

---

[5] While Mr. Shanahan testified this was his belief, his maintaining a personal checking account where all property income was deposited and expenses paid strongly suggests his belief to have been unreasonable and unjustified.

4

trust's borrowing $250,000 from Butler Bank, Mr. Shanahan signed the certificate as a trustee of the trust. In the Agreed Statement of Facts contained in the Joint Pretrial Memorandum filed by the parties prior to trial, it was agreed that at various times Mr. and Mrs. Shanahan filed federal income tax returns indicating that Mr. Shanahan held a 50% ownership interest in the Dream Realty Trust. I find that the 2006, 2007 and 2008 tax returns declaring business income and expenses on commercial property in Tyngsboro are the returns referred to by the parties. Mr. Shanahan should have but failed to list his ownership interest in the Dream Realty Trust in item 18 of his SOFA.

In item 10 of his SOFA, Mr. Shanahan listed a 2009 transfer of his beneficial interest in the Dream Realty Trust to his daughters. At trial Mr. Shanahan testified this was an error as he continued to own a beneficial interest in the trust. In his December 22, 2011 amendment to his SOFA, Mr. Shanahan added his ownership interest in the Dream Realty Trust in item 18 but continued to list the 2009 transfer to his daughters in item 10.

In an application to the Alcoholic Beverages Control Commission of Massachusetts dated December 3, 2008, Mr. Shanahan applied for a liquor license to be issued to Three Middlesex Tyngsboro, Inc. Mr. Shanahan listed himself as the treasurer and 50% shareholder of the corporation and signed the application on behalf of the corporation as its treasurer. Mr. Shanahan should have but did not list Three Middlesex Tyngsboro, Inc. in his SOFA item 18.

Mr. Shanahan also should have but failed to list as assets his ownership interests (legal or equitable) in the Lori Lane Trust and the Dream Realty Trust in item 13, 14 or 36 of his schedule B, even if these interests had no value.

At trial Mr. Shanahan testified that to the extent his tax returns and the liquor license application reflected his ownership interests in Dream Diner, Inc., Dream Realty, LLC, or Three

5

Middlesex Tyngsboro, Inc., they were mistaken. He testified he didn't understand what being an owner of an entity meant. I find Mr. Shanahan's testimony in this regard lacking in credibility.

Mr. Shanahan failed to disclose in item 10 of his SOFA that on August 17, 2009, he sold to a car dealer for $5000 his 1956 Ford Thunderbird automobile (which he had purchased in 2003 for $42,000). He also failed to disclose in item 10 that as part of the same transaction he used the $5000 to purchase from the car dealer a 1964 Ford Galaxy automobile and caused title to the vehicle to be placed in the name of Mrs. Shanahan.

On December 22, 2011, Mr. Shanahan filed an amended schedule B to add his beneficial interest in Dream Realty Trust in item 14 and the 2010 income tax refund in item 18 and an amended SOFA to add in item 18 Dream Realty Trust, Dream Diner, Inc. and Three Middlessex Inc. On February 29, 2012, he filed a second amended SOFA to add in item 10 the transfer of the Thunderbird to Hampton Motor Company and to add in item 14 that as trustee of the Lori Lane Trust he held property owned by his brother, John Shanahan, and his sister, Maureen McNiff.

The December 22, 2010 amendments were filed after Laroc had conducted an examination of Mr. Shanahan pursuant to Fed. R. Bankr. P. 2004 on November 17, 2010, during which Mr. Shanahan was asked about many of the matters which ultimately served as the basis for Laroc's complaint filed here on December 23, 2010. The February 29, 2012 amendments were filed well after the filing of Laroc's complaint.

Having set forth in sufficient detail the factual background, it is now appropriate to measure the relevant facts against the applicable legal standards.

To ensure that only honest debtors receive a fresh start, the Bankruptcy Code in § 727 enumerates several activities which constitute grounds for denial of a discharge. Sections

727(a)(2)(A) and (B), (3), (4)(A) and (5), the sections relied upon by Laroc, provides as follows:

(a) The court shall grant the debtor a discharge, unless…

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

    (A) property of the debtor, within one year before the date of the filing of the petition; or

    (B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case--

    (A) made a false oath or account; …

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities….

"Bankruptcy is a serious matter and when one chooses to avail himself of the benefits of Chapter 7 relief he assumes certain responsibilities, the foremost being to fully disclose his assets and to cooperate fully with the trustee. As such, debtors have an uncompromising duty to disclose whatever ownership interest [they hold] in property." *United States Trustee v. Garland (In re Garland)*, 417 B.R. 805, 814-15 (B.A. P. 10th Cir. 2009). Debtors must "disclose everything," rather than "make decisions about what they deem important enough for parties in interest to know." *Id.*

"[D]ischarge is a privilege reserved for debtors who fulfill their unconditional, absolute

7

obligation to make full disclosure of all matters relevant to the administration of the estate. *Vasiliades v. Dwyer*, 05-10479, 2006 WL 1494081, at *3 (D. Mass. May 23, 2006) (internal citation and quotation marks omitted). It permits an "honest but unfortunate debtor" a fresh start, free from the debts of his creditors. *Local Loan Co. v. Hunt* 292 U.S. 234, 244, 54 S.Ct. 695, 699 (1934) (noting that the purpose of the Bankruptcy Code's predecessor, the Bankruptcy Act, was to give "to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt."). To emphasize the paramount importance of the fresh start policy of the Bankruptcy Code, the United States Court of Appeals for the First Circuit warned, "[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." *Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir. 1987) (quoting *Dilworth v. Boothe,* 69 F.2d 621, 624 (5th Cir. 1934)).

With respect to Bankruptcy Code § 727(a)(4), "[t]he burden lies with the trustee to demonstrate by a preponderance of the evidence that the debtor (1) knowingly and fraudulently, (2) made a false oath in or in connection with the case, (3) relating to a material fact." *Nickless v. Fontaine (In re Fontaine)*, 467 B.R. 267, 271 (Bankr. D. Mass. 2012).

> A material fact under § 727(a)(4) is one that has a non-trivial effect upon the estate and the creditors. *In re Sullivan,* 444 B.R. 1, 8 (Bankr. D. Mass. 2011). The subject matter of a false oath is material, and thus sufficient to bar discharge, if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property." *In re Tully,* 818 F.2d at 111 (quoting *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984)). At least one bankruptcy court has held that "any omission of income from a debtor's statements is material." *In re Crumley,* 428 B.R. 349, 360 (Bankr. N.D. Tex. 2010).
>
> The requirement that the false oath be "knowingly and fraudulently" made is met "if the debtor 'knows the truth and nonetheless willfully and intentionally swears to what is false.'" *In re Sullivan,* 444 B.R. at 8 (quoting *Gordon v. Mukerjee (In re Mukerjee),* 98

8

> B.R. 627, 629 (Bankr. D.N.H. 1989)). As the Court of Appeals for the First Circuit observed in *In re Tully,* "reckless indifference to the truth ... has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." 818 F.2d at 112 (quotations omitted). "Even though courts will not construe an ignorant or inadvertent omission as evidence of fraudulent intent, reckless disregard may nonetheless be found based on the 'cumulative effect of a series of innocent mistakes.' " *In re Koss,* 403 B.R. at 213. Ultimately, "[n]either the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *In re Tully,* 818 F.2d at 110.

*Fontaine*, 467 B.R. at 272.

I find that Mr. Shanahan has knowingly and fraudulently made false oaths in connection with his original and amended schedules and SOFA by, among other things, failing to disclose the true balance in his bank account, the sale of his Thunderbird and the gift of the sale proceeds to his wife for purchase of another car and the 2010 income tax refund and the subsequent disposition of his share of that refund.

Mr. Shanahan suggests that by amending his schedules and SOFA he has immunized himself from Laroc's claim that he knowingly and fraudulently made a false oath in his original schedules and SOFA. Mr. Shanahan's reliance on his amendments is a day late and a dollar short. The timing of the amendments establishes that they were precipitated not by Mr. Shanahan's discovery of inadvertent omissions in his original bankruptcy pleadings but by Laroc's questioning of him during a Rule 2004 examination the month prior to the first set of amendments. *Vasiliades*, 2006 WL 1494081, at *7. Even had the amendments not followed close on the heels of Laroc's Rule 2004 examination of Mr. Shanahan, the scope and materiality of the omissions from the original schedule and SOFA could not reasonably be justified by a defense of inadvertence. Nor does the fact that Mr. Shanahan attributes minimal or no value to some of the omitted items excuse his failure to disclose them. *United States Trustee v. Sohmer (In re Sohmer)*, 434 B.R. 234,

9

253 (Bankr. D. Mass. 2010) ("*materiality is not defeated by the fact that the undisclosed property interests are determined to be without value"*) (emphasis in the original).

In any event, even after two attempts by Mr. Shanahan to correct errors and omissions in his schedules and SOFA, they still fail to disclose correctly the true balance in his Raytheon Credit Union checking account, the transfer to his wife of his tax refund, and the transfer to her of the proceeds of the sale of the Thunderbird in the form of the Ford Galaxy. Therefore, based on Bankruptcy Code § 727(a)(4)(A) Mr. Shanahan is not entitled to a discharge.

With respect to § 727(a)(3), I find that Laroc has failed to prove by a preponderance of the evidence the existence of documents relating to the undisclosed or improperly disclosed assets and that Mr. Shanahan destroyed or otherwise concealed these documents. Likewise I find that Laroc has failed to carry its burden under § 727(a)(2)(A) or (B). Laroc was required to prove by a preponderance of the evidence that (1) the debtor transferred, removed, destroyed, mutilated, or concealed (2) property of the estate (3) within one year prior to the filing of the debtor's bankruptcy case (4) with intent to hinder, delay or defraud a creditor. Section 727(a)(2)(B) is identical to § 727(a)(2)(A) except that it applies to transfers occurring post-petition. The undisclosed purchase of the Ford Galaxy in Mrs. Shanahan's name using the proceeds of the sale of Mr. Shanahan's Thunderbird comes closest to a § 727(a)(2)(A) violation except for the fact that it occurred more than a year prior to Mr. Shanahan's bankruptcy. As for the transfer of the 2010 income tax refund, while it occurred in close proximity to Mr. Shanahan's bankruptcy petition, the evidence does not establish whether it was made pre or post-petition.

Section 727(a)(5) provides grounds for denial of a discharge when there has been an unexplained decrease in a debtor's assets. "[A] court is interested in what happened to a debtor's

assets and not in the wisdom of the debtor's disposition of the assets. *Schreiber v. Emerson (In re Emerson)*, 244 B.R. 1, 29 (Bankr. D.N.H. 1999). It does not require fraudulent intent. *Id.* In this case I find that Laroc has failed to establish an unexplained diminution of assets that would serve as the basis for denial of the debtor's discharge under this section.

As Laroc has carried its burden with respect to Bankruptcy Code § 727(a)(4)(A), a separate order denying Mr. Shanahan a discharge will enter.

Dated: June 25, 2013

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel appearing:

Michael B. Feinman, Esq.
Feinman Law Offices
Andover, MA
For the plaintiff, Laroc Associates, Inc.


Jon H. Kurland, Esq.
Kurland & Grossman, P.C.
Chelmsford, MA
For defendant, Patrick K. Shanahan